FILED
4th JUDICIAL DISTRICT COURT
Mora County
6/17/2024 12:17 PM
CLERK OF THE COURT
BLC

STATE OF NEW MEXICO
COUNTY OF MORA
FOURTH JUDICIAL DISTRICT COURT


TANA LOVING SMITH, individually and
As next friend and guardian of minor, S.S.,

    Plaintiffs,

v.                                                                    No. __D-430-CV-2024-00028__

                                            Aragon, Michael A.

BRAD CHRISTMAS, BECKY CHRISTMAS,
and CHRISTMAS RANCH, INC., CHRISTMAS
ENTERPRISES, LLC; CHRISTMAS ACQUISITION LLC;
POLARIS INDUSTRIES, INC., a Delaware corporation; and
DOES 1 through 10, inclusive,

    Defendants.

## COMPLAINT TO RECOVER DAMAGES FOR PERSONAL INJURY

COMES NOW Plaintiff, Tana Loving Smith, individually and on behalf of her minor daughter S.S. (collectively hereinafter Ms. Smith, Plaintiff or Plaintiff and her minor daughter), by and through her attorneys of record, Guebert Gentile Piazza & Junker, P.C. (Robert F. Gentile and Elizabeth M. Piazza), and MPJ Law Firm, LLC (Michael P. Jasso) and for her Complaint to Recover Damages and for Personal Injury alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      The Plaintiff is a resident of Williamson County, Texas.

2.      Ms. Smith is the biological mother of her minor daughter S.S. who resides with her in Texas.

3.      Defendant Brad Christmas is a resident of County of Mora, State of New Mexico.

4.      Defendant Becky Christmas is a resident of Wagon Mound, County of Mora, State of New Mexico.

5. Christmas Ranches, Inc. is a domestic for profit corporation, with its principal place of business located at #1 Christmas Ranch Road, Wagon Mound, NM 87752.

6. Service on Christmas Ranches, Inc., can be perfected through its registered agent, Brad Christmas, at the physical address of #1 Christmas Ranch Road, Wagon Mound, NM 87752.

7. Christmas Enterprises, Inc. is a New Mexico corporation under business identification number 1171420. It can be served via its registered agent Brad Christmas, whose address is #1 Christmas Ranch Road, Wagon Mound, New Mexico, 87752.

8. Christmas Acquisition, LLC is domestic company doing business in New Mexico under business identification number 4065165. It can be served via its registered agent Bradford A. Christmas whose address of record is #1 Christmas Ranch Road, Wagon Mound, New Mexico, 87752. Hereinafter Christmas Ranches, Inc, Christmas Enterprises, Inc. and Christmas Acquisition, LLC shall be referred to the Christmas Defendants.

9. Brad Christmas is listed as the President and Director of Christmas Ranches, Inc.

10. Upon information and belief, Becky Christmas is an owner of, agent of, or employee of Christmas Ranches, Inc.

11. Polaris Industries, Inc., ("Polaris") is a foreign profit corporation, engaged in the design, engineering, and manufacturing of power sport vehicles, including task vehicles, and off-road vehicles. Polaris is a Delaware corporation, with its principal place of business at 2100 Highway 55, Medina, Minnesota, 55340-9770.

12. Polaris Industries, Inc., claimed/advertised/marked/certified that the vehicles' protection system complied with the department of Occupational Safety and Health Administration ("OSHA") requirements.

2

13. Polaris at all relevant times herein sold vehicles to members of the general public as well as designing, testing, manufacturing, inspecting, distributing, recalling them, and warning and instructing users on the safe use of the motor vehicles, including the subject vehicle, in exchange for valuable consideration.

14. The above-named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

15. The events giving rise to this complaint occurred in Mora County, New Mexico.

16. This Court has jurisdiction over this matter, and venue is proper.

## FACTS COMMON TO ALL COUNTS

17. Christmas Defendants are the employer of, and / or owned by Brad Christmas.

18. Christmas Defendants are the employer of, and / or owned by Becky Christmas.

19. On June 17, 2021, Plaintiff was a guest at the Christmas Ranch., located at #1 Christmas Road, Wagon Mound, NM 87752, with her ten-year-old daughter.

20. Christmas Ranch is owned and operated by the Defendants Christmas.

21. Christmas Ranch provided a UTV, which was operated by, controlled by, and maintained by, the Christmas Defendants. and/or its employees, to Plaintiff and her daughter to drive on the ranch.

22. The UTV was not properly maintained by Christmas Ranch

23. Christmas Ranch. knew or should have known that the UTV was defective, improperly maintained, or not in good working order

24. The UTV, a 2016 Polaris Ranger XP, was defective at the time of sale.

25. The 2016 Polaris Ranger contained defects that could create a substantial product hazard and/or created an unreasonable risk of serious injury or death.

26. At the time of the subject incident, the Polaris Ranger was in substantially the same condition as the time of purchase.

27. Defendant Polaris knew or should have known of the defects contained in the 2016 Polaris Ranger.

28. Plaintiff was driving the UTV with her daughter. It was dusty and Plaintiff stopped to put up the windshield to screen her and her daughter from the dust.

29. At around 4:30-5:00 p.m. on June 17th, 2021, Plaintiff was driving the UTV when the vehicle malfunctioned.

30. Due to a defective UTV and/or malfunction of the UTV, Plaintiff was thrown through the windshield of the UTV and it rolled on top of her.

31. She later realized that she was trapped under the UTV and drowning in her own blood.

32. Plaintiff's daughter asked Plaintiff if she was ok and Plaintiff replied, "Mama is not ok."

33. Plaintiff's daughter witness and was in the zone of danger for the entire incident.

34. Plaintiff's daughter could not find the cell phone, so she told Plaintiff that she was going to run to the ranch house to get help.

4

35.    Plaintiff's daughter decided instead to run to the barn, which was closer, to seek help.

36.    Plaintiff's daughter had only been wearing flip flops, which she could not run in. She removed her flip flops and ran barefoot to the barn.

37.    While her daughter was getting help, Plaintiff realized that she needed to get out from under the UTV or she believed she would die.

38.    By some miracle, Plaintiff was able to crawl out from under the UTV. She could not see anything. Riding in the UTV with Plaintiff and her daughter was a dog. After crawling out from under the UTV, Plaintiff grabbed onto the dog, which helped her crawl away from the crash and toward the barn.

39.    With the help from the dog, Plaintiff was able to crawl about three hundred yards away from the crash.

40.    Plaintiff's daughter was able to seek help from a ranch mechanic. He arrived at the crash site. He contacted ranch personnel.

41.    Emergency medical personnel arrived at the scene but realized that Plaintiff needed to be airlifted to a hospital.

42.    Hours later, a medical helicopter arrived and airlifted Plaintiff to the hospital. She had not had any pain medications from the time of the accident until the time she was airlifted.

43.    After the accident, Christmas Ranch brought the UTV to a mechanic in Watrous, New Mexico for repair.

44.    After the UTV was repaired, Christmas Ranch sold the UTV at auction.

45.    The decision to immediately repair the UTV and auction it was intentional and purposeful so that the UTV could not be inspected or otherwise investigated.

46.     Despite being properly seated, Plaintiff sustained catastrophic injuries because the subject vehicle violated several crashworthiness principles and thereby failed to protect her.

47.     There are five recognized crashworthiness principles in the automobile industry. They are as follows:

a.          Maintain survival space;

b.          Provide proper restraint throughout the entire accident;

c.          Prevent ejection;

d.          Distribute and channel energy; and

e.          Prevent post-crash fires.

48.     When the National Highway Traffic Safety Administration ("NHTSA") created the Federal Motor Vehicle Safety Standards **("FMVSS")** in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that referenced above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

49.     The National Transportation Safety Board ("NTSB") has also stated that "[v]ehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection-which is achieved, in part, by vehicle structure-includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

50.     Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

51. Vehicle manufacturers have known for decades and have admitted under oath that there is a distinction between the cause of an accident versus the cause of an injury.

52. Indeed, vehicle manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death *following* an accident through the use of a vehicle's various safety systems.

53. Defendant Polaris advertises its products as safe for its consumers, in violation of federal and state standards.

54. Defendant Polaris' advertising of safety is false.

55. As a result of the crash, Plaintiff suffered blunt trauma to her face, noted as severe face smash injury, resulting in bilateral comminuted nasal bone, bilateral maxillary process, bilateral anterior maxillary buttress, bilateral pterygoid medial lateral pterygoid plate, bilateral zygomatic arch, bilateral superior and inferior orbital rims, bilateral lamina papyracea and lateral orbital walls.

56. Plaintiff's right globe was ruptured and she suffered left periorbital hematoma. She had complex facial fractures compatible with bilateral LeFort III pattern.

57. She underwent surgery and has had numerous plates implanted. Her jaw, which was detached from her face, was surgically repaired, and wired shut during recovery.

58. Plaintiff lost the use of her left eye, and it was removed and replaced with a prosthetic eye.

59. As a result, Plaintiff is permanently disfigured. She will need to have her prothesis replaced every three-to-five years.

60. As a result, Plaintiff's minor daughter suffered injuries.

## COUNT I –NEGLIGENCE / PREMISES LIABLITY
### (Defendants Christmas)

61.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

62.    The Defendants Christmas owed a duty to use ordinary care to keep the premises safe for visitors and/or patrons like Plaintiffs.

63.    As set forth in the Restatement (Second) of Torts §§ 368, 371 (1963), a possessor of land who carries on, creates, or permits activity or condition involving unreasonable risk of harm to others is liable to persons harmed even if outside the land.

64.    At the time of the occurrence that is the subject of this Complaint, Plaintiffs were visitors who entered and/or remained upon the premises with the express or implied permission of the owner and or occupant(s) of the Christmas Ranch premises.

65.    The Defendants Christmas breached the duty of a premises owner and or occupier by allowing the existence of the dangerous condition that caused injury to Plaintiffs, namely the allowing the use of a UTV that was knowingly defective, with little to no oversight and no safety measures in place.

66.    The Defendants Christmas had a duty to protect Plaintiffs from a foreseeable risk that a defective UTV would injure Plaintiffs through its use; as the risk increased, the amount of care to be exercised by all Defendants also increased.

67.    The injuries and damages complained for herein are a direct and proximate result of the failures and omission of the Defendants Christmas' failure to use ordinary care in providing a safe premise.

68.    Defendants Christmas' negligence rises to recklessness and wanton disregard for the safety of Plaintiffs. Such conduct – either individually or cumulative in nature – requires that

the Defendants, either individually or jointly and severally, be subject to the assessment of punitive damages.

## COUNT IV: NEGLIGENT HIRING, TRAINING AND SUPERVISION
### (Defendants Christmas)

69.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

70.     Christmas Ranch., was the employer and/or principal of Brad Christmas, Becky Christmas, and John Does I-X.

71.     Christmas Ranch should have known that negligently hiring, retaining, or supervising employees in connection with the safety and/or maintenance of its ranch equipment used by guests of the ranch, would create an unreasonable risk of injury to a group or class that includes Plaintiffs.

72.     Brad Christmas, Becky Christmas, and John Does I-X were untrained, inexperienced, and otherwise unqualified to be given responsibility for the maintenance and proper usage of ranch equipment, including the 2016 Polaris XP UTV, and the prevention of injuries arising out of the use of an improperly maintained UTV.

73.     Christmas Ranch failed to use ordinary care in hiring, retaining, or supervising its employees.

74.     Christmas Ranch's negligence in hiring, retaining, or supervising its employees was a direct and/or proximate cause of the injuries and damages complained of by Plaintiffs herein.

## COUNT III – SPOLIATION CLAIM
### (Defendants Christmas)

75.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

76.     At the time of the accident, Defendants knew there was potential for a lawsuit at the time it discovered the Subject accident.

9

77.    Defendants Christmas each had a duty to preserve the UTV driven and/or ridden in by Plaintiffs on June 17, 2021.

78.    Defendants Christmas each breached their duty to preserve the UTV and failed to preserve the UTV.

79.    Plaintiffs have been prejudiced by Defendants Christmas' destruction of evidence.

80.    Defendants' sole intent was to disrupt or to defeat this lawsuit.

81.    The destruction of the evidence will result in significant difficulties in proving Plaintiffs' case and potentially may make it impossible to determine the extent of the Defendants conduct.

82.    As a direct result of Defendants Christmas' negligence as set forth above, Plaintiffs have suffered injuries and damages in an amount to be proved at trial. Defendants Christmas' actions were malicious, willful, wanton, reckless, and/or grossly negligent. Plaintiffs are entitled to an award of punitive damages in an amount to be determined by the trier of fact, in order to punish the Defendants Christmas and deter others from similar conduct.

## COUNT IV – STRICT PRODUCTS LIABILITY, FAILURE TO WARN, BREACH OF EXPERSS WARRANTY, BREACH OF IMPLIED WARRANTY
### (Defendant Polaris Industries, Inc.)

83.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

84.    Defendant Polaris is a manufacturers/suppliers in the business of putting off-road vehicles on the market and into the stream of commerce; thus, they are jointly and severally liable for harm caused by an unreasonable risk of injury resulting from a condition of the product or from the manner of its use.

85.    An unreasonable risk of injury is a risk that a reasonably prudent person having full knowledge of the risk would find unacceptable, taking into consideration the ability to eliminate

10

the risk without seriously impairing the usefulness of the product or making it unduly expensive. Such an unreasonable risk of harm makes the product defective, irrespective of the care taken in the manufacture and supply process.

86. Plaintiffs were a person who could reasonably expect to use the Polaris in question.

87. At the time of the incident at issue, the Polaris Ranger was defective.

88. At the time of the incident in question, Plaintiffs used Polaris UTV for a purpose and in a manner that could reasonably be foreseen.

89. Defendants could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the Polaris UTV such as Plaintiffs.

90. Defendants breached their express or implied warranty that the Polaris UTV in question was fit and safe for ordinary use.

91. Defendants failed to use ordinary care to warn of the risk of injury for the issues with the subject Polaris UTV.

92. Manufacturers or sellers of products, like the Defendant, are strictly liable for injuries caused by a product that has been substantially changed or altered since the time of its manufacture if the changes or alternatives are reasonably foreseeable. *Chairez c. James Hamilton Constr. Co.* 2009-NMCA-093.

93. The defective conditions of the Polaris UTV, either singularly or in combination, were a cause of Plaintiff's injuries and damages.

94. Defendants' conduct was negligent, reckless, grossly negligent, and wanton.

**COUNT V- NEGLIGENCE**
**(Defendant Polaris Industries, Inc.)**

95. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

11

96. Defendant manufactured, supplied, and/or assembled the Polaris UTV, and had a duty to use ordinary care in manufacturing, supplying, and/or assembling the Polaris UTV.

97. Defendant had a duty to use ordinary care to avoid a foreseeable risk of injury caused by the condition of the Polaris UTV or the manner in which it was used.

98. The Defendant's duty to use ordinary care to avoid a foreseeable risk of injury continued after the Polaris UTV was delivered. Defendant is liable if they knew, or in the exercise of ordinary care should have known, of a foreseeable risk of injury caused by a condition of the Polaris UTV or the manner in which it could be used.

99. Defendant had a duty to use ordinary care to warn of a risk of injury about which they knew or should have known.

100. Defendant had a duty to use ordinary care to inspect the Polaris UTV for conditions which could expose users to the risk of injury.

101. Defendant had a duty to manufacture, repair and/or replace the Polaris UTV at issue before assembling it, which would expose users to risk of injury and death.

102. The duty of care increases with the severity of danger, thus Defendant's duty was especially high given the likelihood of death or serious injury from use of the Polaris UTV during normal and expected activities.

103. Defendant knew or should have known of the defective design of the Polaris UTV in question prior to the manufacturing, selection, assembly, and/or construction, and supplying to the public for use.

104. Despite that it knew or should have known of the dangerous and defective design, Defendant manufactured, supplied, and/or assembled the Polaris UTV for the public to use.

105.    At the time of the incident in question, Plaintiffs were a foreseeable user of the Polaris UTV for a purpose and in a manner which could reasonably be foreseen.

106.    Plaintiffs could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the Polaris UTV in question, including Plaintiffs.

107.    Defendant's negligent acts, omissions, and breaches of the respective duties, either singularly or in combination, were a cause of Plaintiffs' injuries and damages.

108.    Defendant's conduct was negligent, reckless, grossly negligent, and wanton.

109.    In addition, this accident would not have happened except for the negligence of the Defendant.  *See* doctrine of *Res ipsa loquitur*.

## COUNT VI
## STRICT PRODUCTS LIABILIT
### (Defendant Polaris)

110.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

111.    The Defendants are manufacturers, designers, and/or suppliers in the business of putting the subject vehicle on the market and are therefore liable for damages caused by an unreasonable risk of injury and harm resulting from a condition of the subject vehicle or from the manner of its use.

112.    An unreasonable risk of injury is a risk that a reasonably prudent person having full knowledge of the risk would find unacceptable, taking into consideration the ability to eliminate the risk without seriously impairing the usefulness of the product or making it unduly expensive. Such an unreasonable risk of injury and harm makes the product defective, regardless of the care taken in the manufacture, design, and supply process.

113.    The injuries complained of herein occurred because the vehicle in question was not reasonably crashworthy and, thereby, created an unreasonable risk of injury and harm.

13

114.    Plaintiffs were a person whom the Defendant could reasonably have expected to use the subject vehicle.

115.    At the time of the collision, the subject vehicle was defective, including but not limited the following conditions:

a.    The vehicle violated principles of crashworthiness;

b.    The vehicle was not drop tested;

c.    The vehicle was not subjected to rollover testing;

d.    The vehicle was not subjected to pendulum testing;

e.    The vehicle was not properly subjected to FEM, FEA and finite modeling that allow different material and designs to be evaluated;

f.    The vehicle violates consumers' expectations because consumers expect that their vehicle will be properly tested, properly designed and engineered, and use materials that are safe,;

g.    The vehicle failed to utilize ejection mitigation glass;

h.    The vehicle failed to utilize non-tempered side glass;

i.    Partial ejection of a restrained occupant violated **FMVSS** 209;

j.    The vehicle failed to provide proper protection;

k.    The vehicle failed to provide proper safety;

l.    The vehicle violated principles of engineering, racing technology and decades of research pertaining to crash safety;

m.    Safety systems must work regardless of who caused the accident;

n.    There is an absolute distinction between the cause of an accident and the cause of an injury; and

14

o.     The defects and negligence were the producing, direct, substantial, and proximate cause of the fatal injuries and damages.

116.    At the time of the collision, Plaintiff was using the subject vehicle for a purpose and in a manner which could be reasonably foreseen.

117.    The Defendant could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the subject vehicle, including Plaintiff.

118.    Plaintiff's injuries were caused by a condition or conditions of the subject vehicle which were not substantially changed or unforeseeably altered after the Defendant placed the subject vehicle on the market.

119.    The defective conditions of the subject vehicle, either singularly or m combination, were a cause of Plaintiff's injuries and damages.

## COUNT VII
## LOSS OF CONSORTIUM

120.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

121.    Minor S.S.is the daughter of Plaintiff.

122.    Plaintiff is the parent and legal guardian of Minor S.S.

123.    Plaintiff and Minor S.S. have an extremely close and loving relationship.

124.    Minor S.S. is dependent upon Plaintiff.

125.    It was foreseeable that Minor S.S. would be harmed by the acts and omissions of Defendants that resulted in catastrophic injuries to Plaintiff.

126.    The conduct of Defendants was malicious, willful, reckless, and wanton.

127.    Defendants are liable to Minor S.S. for actual and punitive damages in amounts to be determined at trial, plus costs.

15

## COUNT VIII
## BYSTANDER LIABILITY

128.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

129.    Minor S.S. witnessed when her mother was ejected through the windshield and the Polaris UTV rolled on top of her.

130.    Minor S.S. was required to watch her mother bleeding and trapped under the vehicle.

131.    Minor S.S. held a close and personal relationship with her mother.

132.    The incident was a sudden and traumatic event for Plaintiff and Minor S.S.

133.    Minor S.S. has suffered injuries and damages as a result of witnessing her mother get ejected through the window and the Polaris UTV land on top of her mother.

134.    It was foreseeable that Minor S.S. would suffer harm and injuries as a result of the traumatic event.

135.    Minor S.S. did in fact, suffer injuries and damages as a result of the traumatic event.

136.    Defendants are liable for the damages suffered by Minor S.S.

## COUNT IX– JOINT VENTURE AS AND BETWEEN DEFENDANTS CHRISTMAS

137.    Plaintiffs re-allege and incorporate by reference the allegations contained in all prior paragraphs as though fully set forth herein.

138.    At all times relevant to the allegations set forth herein, Defendants Christmas were in a relationship or acting in conjunction with one another regarding the operation of the Christmas Ranch.

16

139.    At all times relevant to the allegations set forth herein, Defendants Christmas agreed to share profits and losses, with the right of mutual control over the business enterprise and/or over the property.

140.    At all times relevant to the allegations set forth herein, Defendants Christmas and TL agreed to combine their money and/or property and/or time for operating the KA Defendants thus creating a business venture.

141.    Pursuant to New Mexico law, Defendants Christmas were in a joint venture.

142.    Defendants Christmas's joint venture caused or contributed to the injuries and damages complained of by the Plaintiffs herein.

143.    Defendants Christmas are jointly and severally liable for the Plaintiffs' damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants, awarded in an amount reasonably necessary to compensate her for damages and injuries, punitive or consequential damages, for interest including pre- and post- judgment interest, costs and for such other and further relief as this court may deem just and appropriate.

GUEBERT GENTILE PIAZZA & JUNKER, P.C.

By____/s/ Elizabeth M. Piazza_____
      Robert F. Gentile
      Elizabeth M. Piazza
      Mekayla J. Schock
      P.O. Box 93880
      Albuquerque, NM 87199-3880
      (505) 823-2300
      rgentile@guebertlaw.com
      epiazza@guebertlaw.com
      mschock@guebertlaw.com

and

17

MPJ LAW FIRM, LLC
Michael P. Jasso
300 Menaul Blvd N.W., Suite A
Albuquerque, NM  87107-1347
(505) 823-6833  -  Telephone
michael@mpjlawfirm.com

*Attorneys for Plaintiff*

18