**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

_____

TANA LOVING SMITH, Individually
and as next friend and guardian of minor,
S.S.,

        Plaintiffs,

v.                                     No. 1:24-cv-00625-KWR/JMR

BRAD CHRISTMAS, _et al_.,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND

THIS MATTER comes before the Court upon Plaintiff's motion to remand filed on June 28, 2024. Doc. 3. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is not well taken, and therefore, is **DENIED**.

## BACKGROUND

On June 17, 2024, Plaintiff Tana Loving Smith ("Plaintiff") filed suit, individually and on behalf of her minor daughter, S.S., in New Mexico state court to recover damages for significant bodily injuries incurred while operating a utility task vehicle (UTV). Ex. A at 1, 3–7 (complaint). Plaintiff and her daughter are citizens of Texas. Doc. 1 at 2 (notice of removal); Ex. A at 1. Plaintiff raises claims for negligence, spoliation, products liability, loss of consortium, bystander liability, and others. Ex. A at 8–17. Plaintiff does not raise any claims arising under federal law.

Plaintiff named Brad Christmas, Becky Christmas, Christmas Enterprises, LLC, Christmas Acquisition, LLC, and Polaris Industries, Inc. as defendants. Ex. A at 1. The Christmas's and Christmas entities are domiciled in New Mexico. Doc. 1 at 2–3; Ex. A at 1–2. Defendant Polaris

Industries, Inc. ("Polaris") is a Delaware corporation with its principal place of business in Minnesota. Doc. 1 at 3; Ex. A at 2. Plaintiff has since voluntarily dismissed her complaint against Christmas Enterprises, LLC. Doc. 16.

On June 18, 2024, Polaris removed the state case under 28 U.S.C. §§ 1332, 1441, and 1446 and filed a notice of removal. Doc. 1. Polaris's removal met all procedural requirements: It filed a notice of removal containing a short and plain statement of the grounds for removal within 30 days from the time Polaris received a copy of Plaintiff's complaint; this Court embraces the New Mexico state court where the state action was filed; Polaris gave written notice to all parties of record; and all necessary exhibits were attached to the complaint. 28 U.S.C. § 1446(a)–(c).

Polaris asserts that, at the time it removed the case, no other defendants had been properly joined and served. Doc. 1 at 5. Plaintiff does not dispute this fact. Doc. 3 at 2. On July 7 and 8, 2024, Plaintiff filed notices of summons served on the remaining defendants. Docs. 11–15. This suggests that, at the time Polaris removed the case, the defendants residing in New Mexico had not yet been served. Because no defendant was properly served at the time Polaris removed the case, it did not require consent from its co-defendants. 28 U.S.C. § 1446(b)(2)(A).

On June 28, 2024, Plaintiff filed a motion to remand the case to state court. Doc. 3. Plaintiff also requested to recover fees and costs resulting from the removal. Doc. 3 at 7. Plaintiff does not argue that the requirements for diversity jurisdiction are lacking or procedures not followed. Rather, Plaintiff argues that removal was improper because the removal statute prohibits a diverse, non-forum defendant from removing if any co-defendants are citizens of the state in which the action is brought. *See* 28 U.S.C. § 1441(b)(2). Polaris responds by arguing that its removal right is restricted only after the forum co-defendants are "properly joined and served." *See id*.

2

**DISCUSSION**

The Court must decide whether 28 U.S.C. § 1441 permits a diverse, non-forum defendant to remove a civil case before service is effectuated upon its forum co-defendants. The Court concludes that it does. Accordingly, Plaintiff's motion to remand must be denied.

**I.      Legal Standard**

A defendant can remove from state court to federal court a civil action that originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). Civil actions involving only state law claims may be brought in federal court if diversity jurisdiction is established. *See* 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants and that the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1); *see also Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005).

Removal premised only on diversity of citizenship is limited by the forum defendant rule. This rule prohibits removal "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "Removal statutes are to be strictly construed . . . and all doubts are to be resolved against removal." *Fajen v. Foundation Reserve Ins.*, 683 F.2d 331, 333 (10th Cir. 1982) (citations omitted).

**II.      Analysis**

At issue is whether removal is proper. As detailed above, a defendant may remove a civil case if diversity jurisdiction exists at the outset. *See supra* section I. Here, the allegations contained in Polaris's notice of removal, Doc. 1, are sufficient to establish diversity of citizenship. Polaris's notice of removal plausibly alleges that, based on the nature of the injuries alleged, the amount in

controversy exceeds $75,000. Doc. 1 at 3–4; *Dart Cherokee Basic Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(a)). The parties admit that Plaintiff Tana Smith and S.S. reside in Texas, and that all defendants are domiciled in states other than Texas. Doc. 1 at 2–3. This satisfies the complete diversity requirement. 28 U.S.C. § 1332(a)(1).

All that is left, then, is to determine whether the forum defendant rule precludes removal. In most cases, the fact that a defendant resides in the state where the action was originally brought (as is the case here) provides a clear basis to remand the case. But this is not most cases.

The forum defendant rule applies "if any of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Non-forum defendants have keyed in on the "joined and served" language to permit "snap removal," or the practice of removing a case *before* service upon a forum co-defendant is effectuated. *See Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 485 (5th Cir. 2020). This benefits from the temporal gap between electronic filing (which can inform a party that they are being sued before being served) and physical service on a defendant. Polaris did exactly this: It (presumably) monitored the electronic docket, and after learning that it was named in this action, removed the case before any forum defendants were served. Doc. 1. Polaris now argues that the case should remain in federal court because, at the time of removal, the forum defendant rule was not yet applicable. Doc. 21 at 4.

While neither the Supreme Court nor Tenth Circuit have ruled on this practice, both provide ample guidance to decide this question. When interpreting a statute, a court begins by determining whether its meaning is plain and unambiguous. *See Ceco Concrete Constr., LLC v. Centennial State Carpenters Pension Trust*, 821 F.3d 1250, 1258 (10th Cir. 2016) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). If the text is unambiguous, then its plain meaning controls

4

unless its literal interpretation leads to an absurd result. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

Here, § 1441(d)(2) unambiguously provides that removal is prevented only if a forum defendant has been "properly joined and served." This interpretation, though perhaps undesirable, does not lead to an absurd result. Accordingly, the Court is compelled to conclude that snap removal is permitted under 28 U.S.C. § 1441.

A.  28 U.S.C. § 1441(b)(2) plainly and unambiguously permits snap removal.

"[I]n all cases of statutory construction, our foremost duty is to ascertain the congressional intent and give effect to the legislative will." *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008) (citations and internal quotations omitted). In doing so, courts first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Ceco Concrete*, 821 F.3d at 1258 (citing *Robinson*, 519 U.S. at 340) (internal quotations omitted); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341; *see also Lexington Ins. v. Precision Drilling Co.*, 830 F.3d 1219, 1221 (10th Cir. 2016) (Gorsuch, J.) ("[T]he best evidence of legislative intentions lies in the language the legislature actually adopted . . . .").

The forum defendant rule, § 1441(b)(2), plainly and unambiguously bars a diverse, non-forum defendant from removing a case only after a forum defendant has been *both* joined and served. *See Texas Brine*, 955 F.3d at 486; *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019). Rather than pointing to any textual ambiguities, Plaintiff instead argues that such an

5

interpretation runs contrary to what (in their view) Congress intended this language to do. Doc. 3 at 4–7; Doc. 30 at 4–13.

Yet, courts are bound to give effect to all the words in a statute. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (1st ed. 2012) [hereinafter Scalia & Garner]. Here, the statute gives a diverse, non-forum defendant an immediate right to remove a case to federal court. 28 U.S.C. § 1441(a). The defendant only loses this right ("A civil action otherwise removable . . . may not be removed") after two conditions ("if") occur: (1) a party in interest is "properly joined and served" and (2) "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(d)(2). Put simply, to prohibit a diverse, non-forum defendant from removing a case despite no forum defendant being served would render a technical term in the statute superfluous. *See generally Williams v. Taylor*, 529 U.S. 362, 364 (2000) (noting that it is a "cardinal principle of statutory construction that courts must give effect . . . to every clause and word of a statute").

The Court will not read ambiguity or unwritten terms into a statute because what results seems illogical or imprudent. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 683 (2020) ("Judges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations."); Scalia & Garner 174 ("A provision that seems to the court unjust or unfortunate . . . must nonetheless be given effect."). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie*, 540 U.S. at 534 (citations and internal quotations omitted); *see also United States v. Saenz-Gomez*, 472 F.3d 791, 794 (10th Cir. 2007) ("[I]t is well established law of statutory instruction that, absent

ambiguity or irrational result, the literal language of a statute controls."); *Bostock*, 590 U.S. at 673–74 ("[W]hen the meaning of the statute's terms is plain, our job is at an end.").

      B.  <u>Interpreting 28 U.S.C. § 1441(d)(2) to permit snap removal, though perhaps undesirable, is not an absurd result.</u>

      Courts are bound to follow a statute's plain and ordinary meaning. *See supra* section II.A. An exception to this rule exists, however, when its plain meaning leads to an absurd result. *See Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc). The absurdity doctrine is a contextual canon used to avoid an "outcome which Congress clearly could not have intended." *In re McGough*, 737 F.3d 1268, 1276 (10th Cir. 2013); *see also* Scalia & Garner 234.

      Plaintiff principally argues that snap removal is clearly contrary to Congress's intentions because it added the "properly joined and served" language to prevent plaintiffs' gamesmanship (frivolously joining defendants to defeat diversity). Doc. 3 at 5–7; Doc. 30 at 2–8; *see* Valerie M. Nannery, *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. 541, 548–49 (2018) (discussing the historical context surrounding the 1948 amendment to the removal statute). It follows, then, that Congress would not have intended its fix to create an opportunity for defendants to game the system. *See Lone Mountain Ranch, LLC v. Sante Fe Gold Corp.*, 988 F. Supp. 2d 1263, 1266–67 (D.N.M. 2013).

      Plaintiff further argues that permitting snap removal contravenes the rationales underlying the forum defendant rule and diversity jurisdiction. Doc. 30 at 14. Namely, the forum defendant rule is Congress's recognition that the primary rationale for diversity jurisdiction—to protect out-of-state litigants from the potential local prejudices found in state courts—does not exist when a defendant is a forum defendant. Doc. 30 at 14; *see Woods v. Ross Dress for Less, Inc.*, 985 F.3d 775, 779 (10th Cir. 2021). When viewed against the background principle that "[f]ederal courts are courts of limited jurisdiction," *see Kokkonen*, 511 U.S. at 477, this suggests that Congress

would not have intended to alter long-settled practice, *see Martin v. Snyder*, 148 U.S. 663, 663–64 (1893), and expand federal jurisdiction where such rationales are lacking.

Plaintiff finally argues that Congress would not intend to unfairly advantage certain defendants equipped with the means to continuously monitor electronic dockets. Doc. 30 at 9–12. Plaintiff suggests that, at the time Congress amended the removal statute in 1948, it was unforeseeable that technology would enable (particularly wealthy) forum defendants to circumvent the forum defendant rule by electronically monitoring state court dockets. Doc. 30 at 12; *see Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 645 (D.N.J. 2008). It follows that, had Congress anticipated such technology, it would have expressly prohibited such practice. Doc. 30 at 12.

These arguments, while aptly explaining why Plaintiff believes sanctioning snap removal is bad policy, do not rise to the level of an absurdity. *See Robbins*, 435 F.3d at 1241 ("One claiming that the plain, unequivocal language of a statute produces an absurd result must surmount a formidable hurdle."); *Bostock*, 590 U.S. at 680–81 ("The place to make new legislation, or address unwanted consequences of old legislation, lies in Congress."). "[W]e cannot reject an application of the plain meaning of the words in a statute on the ground that we are confident that Congress would have wanted a different result" or "because Congress may not have anticipated the result compelled by that language in a particular case." *Robbins*, 435 F.3d at 1241–42; *see also* Scalia & Garner 238 ("The [absurdity] doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions."). "[A] court's 'commonsense' view of public policy must not override the rough and tumble of the legislative process." *Robbins*, 435 F.3d at 1243.

Rather, the absurdity doctrine can be applied "only when it would have been unthinkable for Congress to have intended the result commanded by the words of the statute—that is, when the result would be 'so bizarre that Congress could not have intended it.'" *Robbins*, 435 F.3d at 1241. (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190–91 (1992)). Here, the language in § 1441(d)(2) does not create an irreconcilable conflict among statutory provisions. *See Barnhart*, 534 U.S. at 461. It does not run afoul of any recognized canon of construction or interpretative tool. *See Barnhart*, 534 U.S. at 461; *Robbins*, 435 F.3d at 1242–43. It contains neither a scrivener's error nor devastating omission. *See* Scalia & Garner 235–37. It is clear, therefore, that the statute's plain meaning is not absurd.

As a final note, Congress may in fact have had good reason to draft the statute's language in a manner permitting snap removal. "Congress may well have adopted the 'properly joined and served' requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Gibbons*, 919 F.3d at 706; *see also Texas Brine*, 955 F.3d at 486–87. Indeed, such gamesmanship would not have been entirely unforeseeable at the time: While electronic dockets did not yet exist, it was still possible for a defendant to find out about a lawsuit (for example, plaintiff's counsel requests waiver of service) and remove before being served. The Court, like the Second and Fifth Circuits, thinks it is at least plausible that the Eightieth Congress would have considered this a favorable trade-off. *See BP P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 239 (2021) ("That a law might temper its pursuit of one goal by accommodating others can come as no surprise.").

**CONCLUSION**

Accordingly, Plaintiff's motion to remand, Doc. 3, and request for fees and costs is hereby **DENIED**.

Defendant Polaris's motion for leave to file sur-reply, Doc. 32, is **DENIED** as moot. The Court did not consider Polaris's attached sur-reply when making this decision.

**SO ORDERED**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE